# Larry Allen Stout

### v.

# Commonwealth of Virginia

Record No. 871439

# Larry Allen Stout

### v.

# Commonwealth of Virginia

Record No. 880001

January 13, 1989

Present: Carrico, C.J., Poff,* Compton, Stephenson, Russell, Thomas, and Whiting, JJ.

---

\* Justice Poff participated in the hearing and decision of this case prior to the effective date of his retirement on December 31, 1988.

*William E. Bobbitt, Jr.* for appellant. (Record Nos. 871439 and 880001).

*(Ward L. Armstrong; Armstrong & Armstrong,* for appellant, on ineffective assistance of counsel claim.) (Record Nos. 871439 and 880001).

*Leah A. Darron, Assistant Attorney General (Mary Sue Terry, Attorney General,* on brief), for appellee. (Record Nos. 871439 and 880001).

STEPHENSON, J., delivered the opinion of the Court.

## I

### *Proceedings*

Larry Allen Stout was indicted for the capital murder of Jacqueline Kooshian in the commission of robbery, Code § 18.2-31(d), and the robbery of Kooshian, Code § 18.2-58. Stout pled guilty to both charges. The trial court examined Stout on his pleas and accepted them after determining that the pleas were entered voluntarily, knowingly, and intelligently. Thereupon, the court heard two days of evidence presented by the Commonwealth to establish Stout's guilt. At the conclusion of the evidence, the court found Stout guilty of both charges.

Pursuant to the bifurcated-trial procedure for capital murder cases, a separate hearing on the penalty was conducted. Code § 19.2-264.4. In the penalty phase of the case, the Commonwealth presented evidence of aggravating factors, and Stout presented evidence in mitigation. At the conclusion of all the evidence, Stout moved that he be sentenced to life imprisonment because the Commonwealth's evidence had not proved beyond a reasonable doubt either the "vileness" predicate or the "future dangerousness" predicate for the death penalty. The court overruled the motion and ordered a presentence report.

The court held a sentencing hearing at which further evidence was received, including the presentence report and testimony from Stout. Following the hearing, the court sentenced Stout to death on the capital murder conviction, based upon findings of both "vileness" and "future dangerousness," and to life imprisonment

on the robbery conviction. On November 6, 1987, the court entered final judgments in both cases.

We have consolidated the automatic review of Stout's death sentence with his appeal of right from his conviction of capital murder (Record No. 871439), Code §§ 17-110.1(A) and -110.1(F), and have given them priority on our docket, Code § 17-110.2. Stout appealed the robbery conviction to the Court of Appeals, and by order entered January 5, 1988, the robbery conviction was certified from the Court of Appeals (Record No. 880001) and consolidated with the capital murder appeal. Code § 17-116.06.

## II

### *Facts*

On February 9, 1987, Stout, then 24 years old, his girl friend, Debra Littrell, and their young daughter arrived in the City of Staunton from Florida to live with Carole Lauber and Harley Rathburn in their apartment. Littrell is Lauber's daughter. The apartment was located approximately two blocks from Trimble's Cleaners (Trimble's), a dry cleaning business in the city.

On the morning of February 19, 1987, Stout and Littrell planned a robbery of Trimble's. Approximately 5:10 p.m., Stout and Littrell walked south on Augusta Street towards Trimble's. A short distance from the cleaners, Littrell stopped and sat down on a retaining wall. Stout continued to walk towards the cleaning establishment. Approximately 5:25 p.m., Stout was seen standing at Trimble's front door, "facing in, like he was going in." He was wearing "a camouflage type, multi-colored jacket."

About one minute later, Littrell saw the victim, who later was identified as Kooshian, walk out the front door of the cleaners. Kooshian was holding her bleeding neck with her hands. When Stout failed to reappear, Littrell returned to the apartment.

Stout returned to the apartment and recounted to Littrell what had transpired inside the cleaners. Stout, using a fictitious name, told Kooshian that he had come to pick up a suit. When Kooshian turned around to look for the suit, Stout walked around the counter, grabbed her by her hair, and stabbed her from behind with a knife in the side of her neck. He pulled the knife out and Kooshian fell to the floor. Stout then grabbed two money bags.

Before Stout could stop her, Kooshian stumbled out the front door into the street where she was picked up by a passing motorist.

Stout told Littrell that he thought Kooshian "will die as there was no way she could make it." Upon reading a newspaper account the next day of Kooshian's death, Stout told Littrell that he "felt more at ease" knowing that Kooshian was dead.

Kooshian was the owner and operator of Trimble's. She was 40 years old, married, and the mother of two teenage girls. An employee of Trimble's last saw Kooshian on February 19, 1987, about 4:25 p.m., when the employee left her alone in the store.

Diane Simmons, the motorist who stopped to assist Kooshian, was driving home from work between 5:20 and 5:25 p.m. As Simmons travelled along Augusta Street in the vicinity of Trimble's, she saw Kooshian standing in the street clutching both sides of her throat with her hands. Simmons stopped her automobile; Kooshian came to its passenger side window and said, "[P]lease help me."

Simmons saw thin rivulets of blood running between Kooshian's fingers. Kooshian got into the automobile, and Simmons began driving towards a hospital. As she drove, Simmons observed that Kooshian was losing an "enormous" amount of blood and that her hands were dropping away from her neck. Soon, Kooshian lost consciousness and her head rolled back. When this occurred, Simmons saw a "huge" laceration on Kooshian's neck. Simmons and Kooshian arrived at the hospital's emergency room where efforts were made to resuscitate Kooshian. The efforts failed, and Kooshian was pronounced dead approximately 5:40 p.m.

The city's medical examiner examined Kooshian's body shortly after 6:00 p.m. and determined that death had been caused by a five-inch-long slash wound to the left side of the neck. So deep was the wound that the internal and external jugular veins, the trachea, the larynx, and a number of superficial veins and arteries had been cut. An autopsy disclosed that the depth of the wound was greatest at the larynx where the cut was two inches deep and that the victim had inhaled into her lungs a massive quantity of blood due to the perforation of the internal jugular vein and the larynx. The pathologist who performed the autopsy opined that the depth and location of the wound suggested that the victim had been attacked from behind and that her attacker, while holding a knife in his right hand with the blade pointed up, had reached

around the victim and had slashed downward and to the right from the area of the left ear to the larynx.

Police officers and the medical examiner investigated the crime scene. They found blood on the front door of Trimble's and a trail of blood leading from the door across a sidewalk to a pool of blood in the center of the street. Inside Trimble's, they found a large amount of blood on boxes stacked near the door and a trail of blood from the area of the door to racks of dry cleaned clothes located in the rear of the store. The investigators also found a small pool of blood on the floor in the rear of the store and an earring that matched the earring found on the victim's right ear. They determined that the fatal attack had occurred in the rear of the store. The rear door to the store was locked with a steel bar across it. Approximately $1,200 had been taken from the store.

On February 21, 1987, two days after Kooshian's death, Rathburn and Lauber learned that Stout was involved in the murder-robbery at Trimble's. They contacted the police and gave them permission to search their apartment, including a suitcase belonging to Rathburn.

The contents of the suitcase included Kooshian's purse, a wallet containing photographs of her daughters, a telephone credit card in the name of Trimble's, numerous checks made payable to Trimble's, Stout's camouflage jacket, and several bank bags, one of which contained a doctor's prescription for Kooshian. The seized items were sent to the crime laboratory for fingerprint analysis, and Stout's fingerprints were found on the photographs of Kooshian's children.

When Stout was arrested, the arresting officer removed a folding "Buck" knife from Stout's left hip pocket. The knife was sent to the State Medical Examiner's office, where it was determined that the knife was the weapon used to cut Kooshian's throat.

## III

### Effect of Guilty Plea on Certain Matters

In his assignments of error 3 through 6,* Stout seeks to challenge the constitutionality of the death penalty statute and the

---

* These assignments of error state the following:

3) That the sentencing procedure is unconstitutionally vague because of the discrepancy between the reference to "past criminal record of convictions" in § 19.2-264.2 and "prior history" in subsection C of § 19.2-264.4.

death penalty itself. Because Stout knowingly and voluntarily pled guilty, these assignments of error are not cognizable in this appeal. *Beaver* v. *Commonwealth*, 232 Va. 521, 526-27, 352 S.E.2d 342, 345 (defendant appealing death sentence "may not complain of any non-jurisdictional defects that occurred prior to his guilty plea."), *cert. denied*, 483 U.S. 1033, 107 S.Ct. 3277 (1987); *see also Tollett, Warden* v. *Henderson*, 411 U.S. 258, 267 (1973); *Mason* v. *Commonwealth*, 219 Va. 1091, 1098, 254 S.E.2d 116, 121, *cert. denied*, 444 U.S. 919 (1979); *Peyton* v. *King*, 210 Va. 194, 196-97, 169 S.E.2d 569, 571 (1969); *Crutchfield* v. *Commonwealth*, 187 Va. 291, 296, 46 S.E.2d 340, 342 (1948). We also dispose of Stout's appeal of his robbery conviction on the same ground.

## IV

### *Proof of Vileness*

The trial court found that the "vileness" predicate for imposing the death penalty, as prescribed in Code § 19.2-264.2, had been proved beyond a reasonable doubt. Stout contends that the evidence is insufficient to support the trial court's finding. He asserts that the single knife wound to Kooshian's neck does not constitute an "aggravated battery" as that term is used in Code § 19.2-264.2.

■ Code § 19.2-264.2 provides that the death penalty shall not be imposed unless the court or jury finds either that the defendant, based on his past criminal record, would be "a continuing serious threat to society" (the "future dangerousness" predicate) or, as pertinent to this inquiry, that the defendant's "conduct in committing the offense . . . was outrageously or wantonly vile, horrible or inhuman in that it involved . . . an aggravated battery to the victim" (the "vileness" predicate). Within the context of

---

4) That imposition of the death penalty violates the 8th and 14th Amendments to the Constitution of the United States because it amounts to cruel and unusual punishment.

5) That the aggravating factors which must be established in order to impose the death penalty are so vague and overbroad as to make the decision arbitrary and irrational, and therefore, unconstitutional.

6) That the death penalty as presently administered constitutes a violation of equal protection because of the greater likelihood that penalty will be sought and, if sought, administered when the victim is white and the defendant is black.

Code § 19.2-264.2, the term "aggravated battery" means "a battery which, qualitatively and quantitatively, is more culpable than the minimum necessary to accomplish an act of murder." *Smith v. Commonwealth*, 219 Va. 455, 478, 248 S.E.2d 135, 149 (1978), *cert. denied*, 441 U.S. 967 (1979).

In *Edmonds v. Commonwealth*, 229 Va. 303, 329 S.E.2d 807, *cert. denied*, 474 U.S. 975 (1985), the victim's throat was cut with a knife. The victim also had been struck in the head with a brick prior to receiving the knife wound. We held that an "aggravated battery" had been established by both wounds; we further concluded, however, that

the neck wound, *considered alone*, constitutes an aggravated battery within the intendment of the definition in *Smith* [, 219 Va. 455, 248 S.E.2d 135]. The savage, methodical manner in which it was inflicted, leaving the victim to suffer an interval of agony awaiting death, evinces a criminal animus more culpable than that involved in a battery which causes sudden death.

*Edmonds*, 229 Va. at 313, 329 S.E.2d at 814 (emphasis added).

In the present case, Stout saw two money bags and a purse in plain view on the store's front counter. He posed as a customer who had come to pick up a suit of clothes. When Kooshian turned to walk to the rear of the store, Stout could have taken the money bags and purse and fled without harming Kooshian. Instead, he followed her to the rear of the store, grabbed her from behind by the hair, and cut her throat.

The cut was five inches long, beginning near her left ear and extending downward and to the right into the larynx, where the wound was two inches deep. The wound perforated Kooshian's internal jugular vein and larynx, causing massive inhalation of blood into her lungs.

Kooshian stumbled out of the building into the street, clutching her neck with both hands in an effort to stop the bleeding. She was able to attract the attention of Simmons, a passing motorist, and to ask for help. Kooshian remained conscious for a period of time after entering Simmons' automobile, all the while applying pressure to her neck with her hands. Kooshian lived for approximately five minutes after receiving the wound.

With regard to infliction of the knife wound, we believe that the facts in the present case are similar to those in *Edmonds*. The wound was inflicted in a "savage" and "methodical" manner, and Kooshian was left "to suffer an interval of agony awaiting death." Clearly, the manner in which the wound was inflicted evinced "a criminal animus more culpable than that involved in a battery which causes sudden death." We hold, therefore, that the evidence supports the trial court's finding of the "vileness" predicate.

■ It should be noted, however, that the trial court also found that the "future dangerousness" predicate, prescribed in Code § 19.2-264.2, had been proved beyond a reasonable doubt. Indeed, Stout concedes, and the record clearly shows, that the evidence established future dangerousness. We have held that "[w]hen a [fact finder] makes separate findings of specific statutory aggravating circumstances, any of which could support a sentence of death, and one of the circumstances subsequently is invalidated, the remaining valid circumstance, or circumstances, will support the sentence." *Tuggle* v. *Commonwealth*, 230 Va. 99, 110, 334 S.E.2d 838, 845 (1985) (*citing Zant* v. *Stephens*, 462 U.S. 862 (1983)), *cert. denied*, 478 U.S. 1010 (1986); *see also Watkins* v. *Commonwealth*, 229 Va. 469, 489, 331 S.E.2d 422, 437 (1985), *cert. denied*, 475 U.S. 1099 (1986); *Poyner* v. *Commonwealth*, 229 Va. 401, 427, 329 S.E.2d 815, 833, *cert. denied*, 474 U.S. 888, 474 U.S. 865, 474 U.S. 865 (1985). Thus, even absent the finding of vileness, the trial court's finding of future dangerousness is sufficient to support the imposition of the death penalty.

## V

### *Statutory Review*

Stout contends that the sentence of death was excessive and disproportionate to the penalty imposed in similar cases. This proportionality issue is one that we are required to consider and-determine in every case in which the death sentence has been invoked.

In addition to consideration of any errors in the trial enumerated by appeal, the [Supreme Court] shall consider and determine:

1. Whether the sentence of death was imposed under the influence of passion, prejudice or any other arbitrary factor; and

2. Whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.

Code § 17-110.1(C).

## A

### *Passion, Prejudice, or Arbitrariness*

The trial court imposed the death penalty upon findings that (1) "based on [Stout's] prior history . . . and the circumstances surrounding the commission of the offense, there is a probability that [Stout] would commit criminal acts of violence that would constitute a continuing serious threat to society", and (2) "[Stout's] conduct in committing the offense was outrageously, wantonly vile, horrible and inhumane in that it involved aggravated battery to the victim beyond the minimum necessary to accomplish the act of murder."

The record discloses that Stout began committing crimes at age 18 to provide funds to sustain his drug addiction. In January 1983, Stout was convicted of three counts of burglary and four counts of grand theft that were committed in Polk County, Florida, from May through July 1982. Stout was treated as a youthful offender and sentenced to three years in prison. He participated in a work release program while serving this sentence. In February 1984, Stout escaped from custody, and in May 1984, he was recaptured. While an escapee, Stout committed grand theft of money from a food store. He was convicted of the escape and the grand theft and sentenced to three-and-one-half years in prison.

In October 1986, Stout was placed on supervised community release, and in December 1986, he was released from the program. Between October 25, 1986, and February 2, 1987, Stout committed five robberies. Stout admitted that in the commission of two of the robberies he subdued his victims by displaying a knife. One victim testified that Stout held the knife directly to her throat. This robbery occurred just 17 days before Stout robbed and murdered Kooshian.

Debra Littrell, Stout's girl friend, testified that she overheard a conversation between Stout and her ex-husband, Gary Oats, in which Stout admitted that he and Oats had shot and killed two men and had dumped the bodies in Saddle Creek, which is located in Polk County, Florida. When Littrell was asked who did the shooting, she stated, "Larry shot one and my ex-husband shot the other one." She also related that the killings were "over drugs. Drugs were supposed to be delivered and they wasn't."

The circumstances surrounding the commission of the offense also demonstrate the probability that Stout would be dangerous in the future. He readily could have stolen Kooshian's money without harming her. Clearly, however, he killed Kooshian to prevent her from identifying him as the culprit.

In Part IV of this opinion, we have discussed the evidence that supports the trial court's finding of the vileness predicate. To further recount that evidence would serve no useful purpose.

We have considered the evidence offered by Stout in mitigation of the death penalty. The evidence produced in mitigation included the testimony of the probation and parole officer, who compiled Stout's presentence report, and a letter written by Stout's mother. Stout also testified at the sentencing hearing.

Stout's presentence report indicated that "he was reared in a substandard economic situation with very little parental guidance and without the benefit of an appropriate male role model." Stout last attended the third grade and "for all practical purposes is functionally illiterate." His sporadic educational background was due to his family's frequent relocation as migrant farm workers.

The probation officer testified that Stout's Florida work release employers characterized him as a "good worker" and an "excellent employee." During his incarceration in Augusta County Jail, Stout had no disciplinary problems and was attempting to educate himself. Stout's mother characterized her son as a loner who had very few friends.

Stout testified that he was "sorry for what [he] did. If . . . [he] could bring the lady back, [he] would, [he] would be glad to swap [places] with her, she could have her life back." He said he "think[s] about it most everyday."

Stout admitted committing the Florida robberies. He denied ever hurting anyone during the robberies or killing the Florida man as Littrell had testified.

In pronouncing Stout's sentence, the trial court stated that it considered "all the evidence in this case, the evidence as presented during the trial . . . , the presentence report, the evidence presented during the sentencing hearing, all matters offered in mitigation and extenuation and all other matters presented during the trial." We also have reviewed the record in its entirety. From that review, we find nothing to suggest that the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor.

## B

### *Excessiveness and Disproportionality*

Stout contends that life imprisonment rather than the death penalty would be the more appropriate punishment. He points to the fact that he pled guilty and that he has expressed remorse. He asserts that he had not intended "to commit a murder at the onset of the robbery," and that multiple wounds were not involved in the murder.

Whether a death sentence is excessive and disproportionate turns upon whether triers of fact "in this jurisdiction generally approve the supreme penalty for comparable or similar crimes." *Stamper* v. *Commonwealth*, 220 Va. 260, 284, 257 S.E.2d 808, 824 (1979), *cert. denied*, 445 U.S. 972 (1980). Pursuant to Code § 17-110.1(E), we have compiled and considered the records of all capital murder cases appealed to this Court. From this review, we conclude that Stout's sentence is not excessive or disproportionate. *See, e.g., Mackall* v. *Commonwealth*, 236 Va. 240, 372 S.E.2d 759 (1988) (death sentence based on future dangerousness for conviction of capital murder while committing robbery); *Pope* v. *Commonwealth*, 234 Va. 114, 360 S.E.2d 352 (1987) (defendant's criminal record demonstrated escalating tendency toward violence; death penalty based on future dangerousness for conviction of murder in commission of robbery), *cert. denied*, 485 U.S. ____, 108 S.Ct. 1489 (1988); *Townes* v. *Commonwealth*, 234 Va. 307, 362 S.E.2d 650 (1987) (death sentence based on future dangerousness for conviction of capital murder in commission of robbery), *cert. denied*, 485 U.S. ____, 108 S.Ct. 1249 (1988); *Williams* v. *Commonwealth*, 234 Va. 168, 360 S.E.2d 361 (1987) (future dangerousness predicate basis of death sentence in conviction of capital murder during commission of robbery), *cert. de-*

*nied*, 484 U.S. ____, 108 S.Ct. 733 (1988); *Gray* v. *Commonwealth*, 233 Va. 313, 356 S.E.2d 157 (murder in commission of robbery; both future dangerousness and vileness found), *cert. denied*, 484 U.S. ____, 108 S.Ct. 207 (1987); *Watkins*, 229 Va. 469, 331 S.E.2d 422 (murder in the commission of robbery; both future dangerousness and vileness found); *Edmonds*, 229 Va. 303, 329 S.E.2d 807 (murder in the commission of robbery; both future dangerousness and vileness found).

## VI

### *Ineffective Assistance of Trial Counsel*

On Stout's motion, we appointed separate independent counsel to represent him "with respect to any claim of ineffectiveness of counsel in the trial of these cases." Independent counsel reviewed the record, and, for the reasons stated on brief, concluded "that from the face of the record, . . . Stout received effective representation of counsel . . . at the guilt phase of the hearing and at the subsequent sentencing hearing." From our review of the record, we conclude that Stout received effective assistance of counsel throughout the proceedings in the trial court.

## VII

### *Conclusion*

For all the foregoing reasons, the trial court's judgments will be affirmed.

*Record No. 871439 — Affirmed.*
*Record No. 880001 — Affirmed.*