JOSEPH JOHN SAVINO

V.

COMMONWEALTH OF VIRGINIA

Record No. 891235

April 20, 1990

Present: All the Justices

*Hugh J. M. Jones, III; Grady W. Donaldson, Jr.* for appellant.
*Eugene Murphy, Assistant Attorney General (Mary Sue Terry, Attorney General,* on brief), for appellee.

JUSTICE STEPHENSON delivered the opinion of the Court.

## I

### Proceedings

On April 24, 1989, Joseph John Savino pled guilty to a capital murder indictment which charged that he "did willfully, deliberately, feloniously and with premeditation, kill and murder Thos 'Thomas' McWaters, Jr. in the commission of robbery while armed with a deadly weapon," in violation of Code § 18.2-31(d). At that time, Savino also pled guilty to an indictment charging him with committing the underlying robbery. Upon entry of the pleas, the trial court concluded as follows:

> Based upon the pleas of guilty, the statement of constitutional rights form [executed by the accused] and the questions which the Court has addressed to the accused and his answers to [the Court], this Court makes a finding of fact for the record that the accused has pled guilty to each of the indictments as charged and that the accused's pleas were freely and voluntarily made with full understanding of the

consequences of the pleas and full understanding of the procedures to follow.

Thereupon, the trial court heard the Commonwealth's evidence in support of the charges. At the conclusion of the evidence, the trial court found Savino guilty of both offenses.

Thereafter, pursuant to the bifurcated-trial procedure for capital murder cases, Code § 19.2-264.4, the trial court conducted the penalty phase of the trial. During this phase, the Commonwealth presented evidence of aggravating factors, and Savino presented evidence in mitigation. *Id.* At the conclusion of all evidence, the court fixed Savino's punishment at death on the capital murder conviction. Prior to sentencing, however, the court ordered a post-sentence report, as provided by Code § 19.2-264.5. After a post-sentencing hearing, the court, by order entered July 20, 1989, affirmed imposition of the death penalty and sentenced Savino accordingly.[1]

We have consolidated the automatic review of Savino's death sentence with his appeal of right of his capital murder conviction, Code §§ 17-110.1(A) and -110.1(F). Pursuant to Code § 17-110.2, we have given them priority on our docket.

## II

### The Murder

Savino and McWaters became acquainted in 1980 while Savino was on parole from a New York prison. For two years while on parole, Savino worked for McWaters' New York construction firm.

In 1982, Savino was returned to prison in New York after being convicted of two counts of robbery. He spent the next six years in prison.

While Savino was in prison, McWaters visited him frequently, communicated with him by telephone, and gave him money. During his incarceration, Savino sent letters to McWaters suggesting a homosexual relationship between them upon Savino's release from prison. No such relationship, however, had existed at that time.

In February 1988, when Savino was paroled from prison, he came to Bedford County where he lived with and worked for Mc-

---

[1] The trial court also sentenced Savino to life imprisonment on the robbery conviction.

Waters on McWaters' farm. Savino and McWaters lived together as lovers.

Later that year, Savino began using cocaine. In order to purchase cocaine, he began writing checks on McWaters' checking account. Consequently, in November 1988, Savino was charged with 26 forging and uttering offenses in Bedford County.

On November 22, 1988, Savino was arrested in the City of Roanoke for possessing cocaine and drug paraphernalia. On November 29, he was released on a bail bond, and he returned to McWaters' home.

On the night of November 29, Savino spoke by telephone with his friend, Billy Sabilia, who lived in New York. The two talked about killing McWaters. On previous occasions, Savino and Sabilia discussed killing McWaters.

That night, according to Savino, after McWaters had gone to bed, Savino used cocaine. Later, when Savino went to bed, McWaters demanded sex, and Savino refused. Savino claimed that, upon being rejected, McWaters told Savino that he was through with him. Thereupon, Savino decided to "eliminate the problem."

Consequently, Savino obtained a hammer from a downstairs room and returned to the upstairs bedroom where McWaters was asleep. Savino struck McWaters with the hammer numerous times on the head with such force that brain tissue exuded from McWaters' skull. While McWaters still was alive and suffering, Savino stabbed McWaters numerous times with two knives. Savino left both knives in McWaters' back.

Savino then took about $100 in cash from McWaters' wallet and went to Roanoke where he purchased cocaine. Later in the night, he returned to McWaters' house, loaded a car with substantial personal property belonging to McWaters, and returned to Roanoke. He was arrested in Roanoke on November 30, 1988.

## III

*Effect of Guilty Plea on Certain Assignments of Error*

■ When an accused enters a voluntary and intelligent plea of guilty to an offense, he waives all defenses except those jurisdictional. *Peyton v. King*, 210 Va. 194, 169 S.E.2d 569 (1969). As we have explained:

[A] voluntary and intelligent plea of guilty by an accused is, in reality, a self-supplied conviction authorizing imposition of the punishment fixed by law. It is a waiver of all defenses other than those jurisdictional, effective as such not only in the lower court but as well in this court. Where a conviction is rendered upon such a plea and the punishment fixed by law is in fact imposed in a proceeding free of jurisdictional defect, there is nothing to appeal. To take any other view would give recognition to an empty right and permit frivolous appeals for the mere sake of delay.

*Id.* at 196-97, 169 S.E.2d at 571. *Accord Stout* v. *Commonwealth*, 237 Va. 126, 131-32, 376 S.E.2d 288, 291, *cert. denied*, 492 U.S. \_\_\_\_, 109 S.Ct. 3263 (1989) (when accused knowingly and voluntarily pled guilty, assignments of error challenging constitutionality of death penalty not cognizable on appeal); *Beaver* v. *Commonwealth*, 232 Va. 521, 527, 352 S.E.2d 342, 345, *cert. denied*, 483 U.S. 1033 (1987) (accused appealing death sentence may not complain of non-jurisdictional defects that occurred prior to guilty plea); *see also Tollett, Warden* v. *Henderson*, 411 U.S. 258, 267 (1973) (when defendant has admitted in open court that he is guilty of offense charged, he may not thereafter raise independent claims regarding deprivation of constitutional rights that occurred prior to entry of guilty plea); *Mason* v. *Commonwealth*, 219 Va. 1091, 254 S.E.2d 116, *cert. denied*, 444 U.S. 919 (1979) (capital murder case in which accused pled guilty).

▮ Savino's assignments of error 3, 4, 5, 9, and 11 seek to raise issues that he waived by the entry of his guilty plea.[2] These issues, therefore, are not cognizable in this appeal.

---

[2] Assignments of error 3, 4, 5, 9, and 11 read as follows:

(3) Whether the sentencing procedure is unconstitutionally vague because of the discrepancy between the reference to "past criminal records of convictions" in Va. Code Sec. 19.2-264.2 and "prior history" in Subsection C of Va. Code Sec. 19.2-264.4.

(4) Whether the imposition of the death penalty violates the eighth and fourteenth amendments to the Constitution of the United States because it amounts to cruel and unusual punishment.

(5) Whether the factors which must be established to impose the death penalty based upon the finding by the court of "future dangerousness" are so vague and overbroad as to make the decision arbitrary and irrational, and, therefore, unconstitutional.

(9) Whether the trial court erred by not granting the appellant's motion to prohibit the imposition of the death penalty for the following reasons:

## IV

### Penalty Phase

### A

### Evidence in Aggravation and Mitigation

During the penalty phase of the trial, the Commonwealth presented evidence of aggravating factors. This evidence revealed that, prior to the incidents involved in the present case, Savino had a substantial criminal record. A portion of this record is summarized in the following table.

| Date | Jurisdiction | Convicted Offense(s) | Sentence |
|------|--------------|----------------------|----------|
| 2/4/76 | Bronx Criminal Court, New York City | criminal trespass | conditional discharge |
| 12/2/77 | Yonkers City Court, Yonkers, New York | assault, 3rd degree | 3 years' probation |
| 11/2/78 | Supreme Court, New York City | robbery, 2nd degree | 4 years in penitentiary |
| 8/24/82 | Bronx Supreme Court, New York City | two counts of robbery, 3rd degree | 2 and ½ to 5 years in penitentiary |

. (a) That the imposition of the death penalty based upon "future dangerousness" as found in Va. Code Sec. 19.2-264.2 through Sec. 19.2-264.5 is unconstitutional because the use of prior unadjudicated criminal conduct evidenced to establish this aggravating factor is permitted without any requirement that the conduct be established by any standard of proof. This practice violates the eighth and fourteenth amendment rights under the United States Constitution of the defendant.

(b) That Va. Code Sec. 19.2-264.2 through Sec. 19.2-264.5 allow the court to consider evidence of prior convictions to impose the sentence of death violating the defendant's protection against double jeopardy.

(c) That the death penalty *per se* constitutes cruel and unusual punishment under current standards of decency.

(d) That failure of the Commonwealth of Virginia to provide for a meaningful appellate *review* denies the defendant of statutory rights and due process of law.

(11) Whether the trial court erred in denying the defendant's motion to dismiss the charge of robbery on the grounds that both a conviction of the offense of capital murder in the commission of robbery and a conviction of robbery would constitute double jeopardy.

| 7/27/83 | Supreme Court, Westchester County, New York | grand larceny, 3rd degree | 1 to 4 years in penitentiary |
|---------|---------|---------|---------|
| 7/27/83 | Supreme Court, Westchester County, New York | two counts, robbery, 1st degree | 4 to 12 years in penitentiary |
| 4/26/89 | Circuit Court, City of Roanoke | (1) possession of cocaine (2) possession of drug paraphernalia | (1) 1 year in penitentiary (2) 12 months in jail |

Savino was on parole when he committed the three robberies and grand larceny in 1982. He also was on parole when he committed the present offenses of capital murder and robbery. Additionally, Savino told his parole officer that, during the period of a year prior to his incarceration in 1982, he committed two to three robberies a week to support his drug habit.

The Commonwealth's evidence of aggravating factors also consisted of the testimony of Dr. Arthur Centor, a clinical psychologist. Dr. Centor had interviewed Savino for three hours and 20 minutes. Dr. Centor also had performed 30 minutes of psychological testing upon Savino.

Dr. Centor testified that Savino did not suffer from any past or current mental illness, and "he was not operating under any serious mental or emotional disturbance" at the time of the present offense. Dr. Centor also testified that Savino was not suffering from any degree of impairment which would limit his appreciation of the wrongfulness of his actions or which would prevent him from controlling his behavior. Dr. Centor opined, however, that Savino "show[ed] signs of future dangerousness in view of his past criminal history so that he would have a high probability of committing criminal acts of violence that would constitute a continuing serious threat to society in the future."[3]

Also during this phase of the trial, Savino presented evidence in mitigation. This evidence revealed that Savino was born on June 17, 1959, to a family of Italian heritage in suburban New York

---

[3] This evidence was admitted over Savino's objection, and its admissibility is the subject of questions presented in this appeal. (See Part IV(B) *infra*.)

City. When he was two and one-half years old, his parents separated, and Savino continued to live with his mother and his younger sister. Savino's mother died in 1980 of leukemia, and his sister died in 1985 of a drug overdose. Savino's father remarried and, generally, Savino experienced a good relationship with his father and stepmother.

Savino attended private elementary schools. Savino first was exposed to homosexuality as a result of advances by teachers at the schools.

Savino first experimented with drugs when he was a young teenager. He began by using marijuana and later used many types of drugs. After being released from prison on parole in 1980, Savino became involved in a homosexual relationship and used heroin heavily. Between 1980 and 1982, Savino became addicted to heroin. In order to obtain money to support his drug habits, Savino became engaged in further criminal activity.

During his second incarceration (1982-1988), Savino participated in a drug rehabilitation program. He successfully completed the program before his release from prison in February 1988.

## B

### Dr. Centor's Testimony

Upon an indigent defendant's motion, the trial court is required to appoint a qualified mental health expert "to evaluate the defendant and to assist the defense in the preparation and presentation of information concerning the defendant's history, character, or mental condition." Code § 19.2-264.3:1(A). The evaluation must include a determination whether, at the time of the offense, (i) the defendant acted under extreme mental or emotional disturbance; (ii) the defendant's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was significantly impaired; and (iii) any other factors exist in mitigation relating to the history or character of the defendant or the defendant's mental condition. *Id.*

In the event an accused, convicted of capital murder, intends "to present testimony of an expert witness to support a claim in mitigation relating to [his] history, character or mental condition," the accused must give notice to the Commonwealth's attorney of his intention. Code § 19.2-264.3:1(E). Code § 19.2-264.3:1(F) provides that if such notice is given and the Common-

wealth thereafter seeks an expert's evaluation, the trial court shall appoint a qualified expert and the defendant shall be ordered to submit to "an evaluation concerning the existence or absence of mitigating circumstances relating to the defendant's mental condition at the time of the offense."

In response to Savino's motion, the trial court appointed Dr. Lisa Hovermale to evaluate Savino. Savino gave the notice provided for in subsection E, and thereafter, the court, pursuant to the Commonwealth's request, appointed Dr. Centor to evaluate Savino.

As previously noted, Dr. Centor opined that Savino "show[ed] signs of future dangerousness in view of his past criminal history so that he would have a high probability of committing criminal acts of violence that would constitute a continuing serious threat to society in the future." At trial, Savino objected to this testimony and also to Dr. Centor's references to evaluations he had made in other capital murder cases.

1

Respecting the testimony of "future dangerousness," Savino contends that Code § 19.2-264.3:1 is unconstitutional because it is violative of the fifth and sixth amendments of the United States Constitution. In support of these contentions, Savino relies upon *Estelle* v. *Smith*, 451 U.S. 454 (1981).

In *Estelle*, the defendant had been compelled by the state to submit to a mental examination that produced testimony of his future dangerousness even though he neither initiated a psychiatric evaluation nor introduced any psychiatric evidence. The Supreme Court held that the defendant's fifth amendment right was violated by the admission of the psychiatric evidence. *Id.* at 468. The Supreme Court also has held, however, that when a defendant requests a psychiatric examination in order to prove a mental-status defense, he is deemed to have waived the right to raise a fifth amendment challenge to the prosecution's use of evidence obtained through that examination to rebut the defense. *Buchanan* v. *Kentucky*, 483 U.S. 402, 422-23 (1987). *Accord Powell* v. *Texas*, ____ U.S. ____, ____, 109 S.Ct. 3146, 3149 (1989).

Code § 19.2-264.3:1 allows use of a defendant's interview with the Commonwealth's expert *only after* the defendant has given notice that he intends to present evidence of his mental con-

dition in the penalty phase of the trial. Thus, when a defendant gives such notice, he waives his fifth amendment privilege against the introduction of psychiatric testimony by the prosecution.

■ In the present case, it was Savino who first requested the mental examination and gave notice of his intention to use the expert's evaluation as mitigating evidence. We hold, therefore, that Code § 19.2-264.3:1 does not violate Savino's fifth amendment right.

Under *Estelle* and *Powell*, a defendant has a sixth amendment right to have his attorney notified of the purpose of any psychiatric examination. *Estelle*, 451 U.S. at 470-71; *Powell*, ____ U.S. at ____, 109 S.Ct. at 3150. Code § 19.2-264.3:1 requires such a notice. Subsection F of the statute requires the Commonwealth to obtain a court order for an evaluation "concerning the existence or absence of mitigating circumstances relating to the defendant's mental condition at the time of the offense." Clearly, upon the entry of such order, Savino was notified of the purpose of the examination.

■ Savino asserts, nonetheless, that his sixth amendment right to counsel was violated because he never was advised that his evaluation could result in testimony of "future dangerousness." In *Woomer v. Aiken*, 856 F.2d 677, 681 (4th Cir. 1988), *cert. denied*, ____ U.S. ____, 109 S.Ct. 1560 (1989), the defendant made the same argument that Savino makes in the present case. The Fourth Circuit concluded, however, that "although Woomer argues that the notice was inadequate because neither he nor his counsel were specifically advised that the evaluations might produce a basis for comment on potential future dangerousness, such specific notice was not required." *Id.* at 682.

■ In the present case, Savino was on notice that, by virtue of Code § 19.2-264.3:1, an examination would be conducted by the Commonwealth's expert in an effort to produce evidence against Savino's interests. Thus, we hold that Savino's sixth amendment right was not violated.

### 2

Savino further contends that the trial court erred in permitting Dr. Centor to express an opinion regarding "future dangerousness" because such an opinion is "unreliable." The same contention was made in *Edmonds v. Commonwealth*, 229 Va. 303, 311, 329 S.E.2d 807, 813, *cert. denied*, 474 U.S. 975 (1985).

In *Edmonds*, we followed the holding in *Barefoot* v. *Estelle*, 463 U.S. 880, 901 (1983), and upheld the admissibility of expert testimony of "future dangerousness." We adhere to our previous holding and reject Savino's contention.

3

Finally, Savino contends that the trial court erred in allowing Dr. Centor to testify about evaluations he had made in other capital murder cases. He asserts that this evidence was "totally irrelevant . . . and should not [have been] allowed to bolster [Dr. Centor's] testimony" of Savino's future dangerousness.

On cross-examination, Savino's counsel asked Dr. Centor how many times he had testified in a sentencing hearing in a capital murder case. Dr. Centor responded that he had testified in eight cases—three times for the defense and five times for the Commonwealth. Defense counsel, in an effort to establish that the witness was biased in favor of the Commonwealth, then asked Dr. Centor if he had sent notices only to Commonwealth's attorneys that he had gone into private practice. The witness responded in the affirmative. On re-direct examination, over Savino's objection, Dr. Centor was permitted to testify about two cases in which he had examined the accused at the request of the Commonwealth and had found a low probability of future dangerousness.

Clearly, Savino's counsel "opened the door" to the challenged testimony by the manner in which he attacked Dr. Centor's credibility on cross-examination. Once a party has "opened the door" to inquiry into a subject, the permissible scope of examination on the subject by the opposing party is "a matter for the exercise of discretion by the trial court," and we will not disturb the court's action on appeal unless it plainly appears that the court abused its discretion. *Bunch* v. *Commonwealth*, 225 Va. 423, 438, 304 S.E.2d 271, 279-80, *cert. denied*, 464 U.S. 977 (1983). Under the circumstances, we conclude that the trial court did not abuse its discretion in allowing the challenged testimony.

V

*Statutory Review*

In addition to considering all errors assigned on appeal, we must consider and determine:

1. Whether the sentence of death was imposed under the influence of passion, prejudice or any other arbitrary factor; and

2. Whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.

Code § 17-110.1(C).

## A

### Passion, Prejudice, or Arbitrariness

After considering the evidence in aggravation and in mitigation, the trial court imposed the death penalty upon a finding that "there is a probability that the defendant would commit criminal acts of violence in the future that would constitute a continuing serious threat to society." Savino does not allege any specific prejudice or passion that influenced the court's sentence. Instead, he simply argues that the judge "must have been impassioned or prejudiced" because Savino and the victim "had been friends for more than ten years" and for ten months prior to the murder had been involved in "an intimate homosexual relationship." Thus, Savino asserts, he should not be sentenced to death for "what can only be described as a crime of passion comparable to a domestic killing arising out of an extremely intense personal relationship between [McWaters] and [Savino]."

Nothing in the record suggests that the trial court acted out of passion, prejudice, or any other arbitrary factor in imposing the death sentence. To the contrary, the record amply supports the court's finding of the "future dangerousness" predicate. Savino's criminal record and history reveals violent and dangerous conduct over a protracted period of time. Moreover, the manner in which McWaters was murdered may be considered in assessing "future dangerousness." *Hoke v. Commonwealth*, 237 Va. 303, 317, 377 S.E.2d 595, 603, *cert. denied*, 491 U.S. ___, 109 S.Ct. 3201 (1989). Undeniably, the manner of the murder was excessive and brutal.

## B

### *Excessiveness and Disproportionality*

 Pursuant to Code § 17-110.1(E), we have compiled and considered the records of all capital murder cases that have been appealed to this Court. Based upon our review of those cases, we conclude that Savino's death sentence is neither excessive nor disproportionate. The records in those cases demonstrate that triers of fact "in this jurisdiction generally approve the supreme penalty for comparable or similar crimes." *Stamper* v. *Commonwealth*, 220 Va. 260, 284, 257 S.E.2d 808, 824 (1979), *cert. denied*, 445 U.S. 972 (1980). *See, e.g., Spencer* v. *Commonwealth*, 238 Va. 295, 319, 384 S.E.2d 785, 800 (1989), *cert. denied*, ____ U.S. ____, 110 S.Ct. 1171 (1990), and compilation of cases cited therein.

## VI

### *Conclusion*

 We have considered all of Savino's assignments of error and find no reversible error.[4] We also have made the required statutory review of the death sentence, Code § 17-110.1, and conclude that the sentence should be upheld. Therefore, the judgment of the trial court will be affirmed.

*Affirmed.*

---

[4] We summarily reject the two remaining assignments of error. In rejecting one, we conclude that the trial court did not abuse its discretion in refusing to exclude cameras from the courtroom.

The other is a bald assertion that "the death penalty is applied disproportionately to males convicted of capital murder and sentenced to death than [it] is applied to females convicted of capital murder and sentenced to death." This issue was not presented to the trial court, and therefore, we will not consider it on appeal. Rule 5:25. Moreover, Savino made no argument in support of the assertion on brief. Thus, he has not complied with Rule 5:27(e) which requires that "[t]he principles of law, the argument, and the authorities relating to each question presented" shall be set forth in an appellant's brief.