COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Fitzpatrick, Judges Coleman and Elder
Argued at Salem, Virginia


HENRY CHRISTIAN OLSEN
                                        MEMORANDUM OPINION[*] BY
v.          Record No. 2305-97-3        JUDGE SAM W. COLEMAN III
                                          DECEMBER 15, 1998
COMMONWEALTH OF VIRGINIA


             FROM THE CIRCUIT COURT OF NELSON COUNTY
                      J. Michael Gamble, Judge

          Bruce R. Williamson, Jr. (Williamson &
          Toscano, on briefs), for appellant.

          Leah A. Darron, Assistant Attorney General
          (Mark L. Earley, Attorney General, on brief),
          for appellee.


     Henry C. Olsen was convicted by a jury of two counts of

aggravated sexual battery and one count of forcible sodomy.  On

appeal, Olsen contends the trial court erred (1) in denying his

motion for a new trial, (2) in denying his motion for a

continuance before his cross-examination of Commonwealth witness

Russell Goldberg, and (3) in admitting the testimony of Deborah

Cole.  Finding no error, we affirm the convictions.

                         I.  BACKGROUND

     On appeal, we view the evidence in the light most favorable

to the Commonwealth and grant to it all reasonable inferences

fairly deducible therefrom.  Higginbotham v. Commonwealth, 216

Va. App. 349, 352, 218 S.E.2d 534, 537 (1975).

---

     [*]Pursuant to Code § 17.1-413, recodifying Code § 17-116.010,
this opinion is not designated for publication.

In 1993, Olsen developed a friendship with a ten-year-old boy, B.A.  With permission from B.A.'s parents, Olsen began taking B.A. on various outings.  On the second outing, Olsen began rubbing B.A.'s "back," "butt," and "privates."  Within a year, B.A. was spending nights with Olsen in Olsen's bed, and Olsen had initiated other sexual acts.  "He [tried to] st[i]ck his penis in [B.A.'s] butt."  Olsen asked B.A. to put his mouth on Olsen's penis and also directed B.A. to wrap his hand around Olsen's penis and rub until Olsen ejaculated.

In 1995, B.A.'s nine-year-old brother T.R. began visiting Olsen at the communal home where Olsen lived.  While swimming together, Olsen touched T.R.'s genitals.  Also, Olsen "played" with T.R.'s genitals while T.R. showered, and on one occasion Olsen had T.R. "wash . . . [Olsen's] penis off with soap."  Olsen had T.R. nap with him and would rub the boy's penis asking if "it was hard enough."  During the naps Olsen also had the boy rub Olsen's penis.  Eventually T.R. spent nights at Olsen's during which Olsen would put lotion on T.R.'s "butt" and "rubbed hard."

Defense witnesses testified that they had never observed Olsen behave inappropriately with the children.  Olsen testified that he had served as a foster parent between 1977 and 1988 for several boys and denied making any sexual advances towards those boys.

The Commonwealth, in rebuttal, called Deborah Cole who lived in the same community home as Olsen.  The Commonwealth elicited

from Cole testimony unfavorable to Olsen. On cross-examination, Cole acknowledged that she left her three-year-old son at the community residence while she worked without concern about Olsen's presence. Then on re-direct, the Commonwealth gave her an opportunity to explain why she permitted her child to remain at the community home in her absence. Over Olsen's objection, Cole testified:

> I've seen a photo plate of the kids that
> Henry has, well, I don't know, he, he told me
> about these kids. They were all about the
> same age. And Tray [Cole's son] is
> substantially below that age, so I've had no
> concerns about anything in regards to Tray.
> Second of all, I hire Arlene to watch him and
> I assume that's what she is doing, and I know
> he's safe when she's watching him.

Also in rebuttal, the Commonwealth called Russell Goldberg. Goldberg testified that Olsen had cared for him as a foster parent and during that time, Olsen fondled his genitals and engaged in oral and anal sex with him. Following an adoption proceeding by Carol Marcasano, which Olsen contested, Marcasano adopted Goldberg. Pursuant to court order, during the pendency of the adoption, Goldberg visited Olsen every other weekend until the final adoption. According to Goldberg, the sexual abuse continued on those weekend visitations. Goldberg testified that he told his social worker he wanted to end the visits with Olsen. He also testified that he did not remember visiting with his guardian ad litem during the adoption proceeding.

Goldberg further testified on cross-examination that as an

- 3 -

adolescent he was hospitalized for mental conditions and attended private schools for troubled youths.  During his stay at one hospital, Goldberg disclosed having been sexually abused by Olsen.  The Department of Social Services investigated the allegations but did not institute charges against Olsen.  Prior to this trial, however, Goldberg had never revealed the full extent of Olsen's sexual abuse.  Goldberg also testified on cross-examination that he had been convicted in Maryland of a felony, the malicious destruction of property.

After Goldberg testified, Olsen moved for a continuance to give him time to obtain records from the hospitals that had treated Goldberg.  The trial judge denied the motion.

Following Olsen's conviction, he made a motion for a new trial based on after-discovered evidence that he claimed discredited Goldberg's testimony.  The evidence included proof of previously undisclosed convictions.  Also, Olsen proffered that Goldberg's guardian ad litem during the adoption proceedings, and Olsen's attorney during the adoption proceedings would testify that, contrary to Goldberg's trial testimony, Goldberg had expressed a desire during the pendency of the adoption proceeding to continue his visits with Olsen.  At this trial, Goldberg testified that he had visited Olsen during the adoption proceeding only because he was under court order to do so.  Olsen proffered that Goldberg's therapist from the time of the adoption would also testify that Goldberg was angry at having to leave

- 4 -

Olsen and that Goldberg continued to have positive feelings for Olsen many months after leaving his residence. Finally, Olsen proffered two of Goldberg's writings from the period when Goldberg was in Olsen's care. In neither writing did Goldberg refer to Olsen in negative terms, and in one writing he expressed positive feelings toward Olsen stating, "The special thing about my Dad is that he give [sic] me hugs."

After hearing arguments in support of the motion for a new trial based on after-discovered evidence, the trial court denied the request for an evidentiary hearing and the motion for a new trial.

## II.  ANALYSIS

### A.  Motion for Continuance

Whether to grant a mid-trial continuance "rests within the sound discretion of the trial court."  Bennett v. Commonwealth, 236 Va. 448, 459, 374 S.E.2d 303, 310 (1988).  If a party is surprised by evidence in the midst of trial, the trial judge shall exercise sound discretion in deciding under the circumstances whether to grant a continuance.  See id.; Snyder v. Commonwealth, 10 Va. App. 67, 72, 389 S.E.2d 727, 730 (1990).

The denial of Olsen's motion for a mid-trial continuance to investigate matters that he knew or should have known might arise was not an abuse of the trial court's discretion.  In a pretrial motion in limine, Olsen had moved the court to suppress any evidence of prior allegations of sexual abuse by Olsen.  Olsen

conceded that he was aware of Goldberg's prior accusation of fondling.  Furthermore, Olsen failed to establish that the evidence he would have used in an effort to discredit Goldberg's testimony was unavailable before trial.

### B.  Motion for a New Trial

Olsen contends the trial court erred in refusing to grant him a new trial based on evidence from a post-trial investigation which he claims proves that Goldberg committed perjury.  After accepting Olsen's proffer of the allegedly impeaching evidence, the trial court denied the motion for a new trial.

The standard by which a trial court evaluates a motion for a new trial is well established:

> Motions for new trials based on after-discovered evidence are addressed to the sound discretion of the trial judge, are not looked upon with favor, are considered with special care and caution, and are awarded with great reluctance. . . .  The applicant bears the burden to establish that the evidence (1) appears to have been discovered subsequent to trial; (2) could not have been secured for use at the trial in the exercise of reasonable diligence by the movant; (3) is not merely cumulative, corroborative or collateral; and (4) is material, and as such should produce opposite results on the merits at another trial.

Stockton v. Commonwealth, 227 Va. 124, 149, 314 S.E.2d 371, 387 (1984).

Olsen contends that this test violates due process because under the test, after-acquired evidence proving that a rebuttal witness committed perjury will never warrant a new trial.

Therefore, Olsen urges that this Court adopt a new test.

Although Olsen did not specifically argue at trial that a new standard to evaluate a motion for a new trial should be adopted for rebuttal witnesses because the established standard violated due process, he is not procedurally barred from making such an argument on appeal. By timely making the motion for a new trial and presenting evidence in support thereof, Olsen "afford[ed] the trial court an opportunity to rule intelligently on the issues presented." Weidman v. Babcock, 241 Va. 40, 44, 400 S.E.2d 164, 167 (1991). Because the trial court had no authority to disregard Virginia law and adopt a new standard, Olsen's failure to argue for a new standard did not deny the trial court an opportunity to rule meaningfully on the motion for a new trial and does not preclude his making the argument here.

Although Olsen may argue for a new standard on appeal, stare decisis limits our authority to grant such a request. "[W]e are bound by decisions of the Supreme Court of Virginia and are without authority to overrule [them]." Tart v. Commonwealth, 17 Va. App. 384, 392, 437 S.E.2d 219, 224 (1993). Accordingly, we review Olsen's appeal under the established standard as announced by the Supreme Court in Stockton.

Under the applicable standard, Olsen's argument is not sound. Nevertheless, the accepted standard does not, as Olsen claims, preclude granting a new trial upon discovery that a rebuttal witness committed perjury. Where the rebuttal evidence

- 7 -

is so material that if disbelieved, it would clearly have affected the trial's outcome, evidence that the rebuttal witness committed perjury would be sufficient to grant a new trial. No Virginia case law supports Olsen's claim or suggests a different application of the standard to rebuttal evidence. In this case the rebuttal evidence was devastating. Had Olsen's after-discovered evidence proven that Goldberg committed perjury, a different result might have obtained.

However, Olsen failed to prove that Goldberg committed perjury. Proof of perjury requires evidence that an individual intentionally make a false material declaration under oath. See Scott v. Commonwealth, 14 Va. App. 294, 297, 416 S.E.2d 47, 49 (1992). The proffered evidence fails to show that Goldberg's testimony, rather than certain extrajudicial statements, was false. Additionally, many of the statements that Olsen offers to impeach Goldberg, far from establishing perjury, are not even inconsistent with Goldberg's testimony of a sexually abusive relationship. The testimony showing that Goldberg expressed love and devotion towards Olsen does not necessarily contradict evidence that the relationship also involved sexual abuse and is not sufficient to warrant setting aside a verdict and awarding a new trial.

Notwithstanding Olsen's argument to the contrary, the trial court's finding that Olsen could have secured the evidence prior to trial was not clearly erroneous. Because Olsen was aware of

Goldberg's fondling accusations, and because Olsen presented no evidence that the material obtained post-trial was unavailable prior to trial, we cannot say that the trial court's finding was clearly erroneous.

Accepting that the after-discovered evidence may have undermined Goldberg's credibility, the trial judge did not abuse his discretion in determining that the results of the trial would not have been different had Olsen presented the proffered evidence at trial.

> [W]hen the newly discovered evidence is confined to testimony concerning the bad character of a witness by his own inconsistent statements made prior to trial but not under oath, or by evidence of other inconsistent facts, a new trial generally will not be granted.

Mundy v. Commonwealth, 11 Va. App. 461, 480, 390 S.E.2d 525, 535, aff'd en banc, 399 S.E.2d 29 (1990). Appellant's "newly discovered evidence" was limited to evidence that might tend to impeach the credibility of Goldberg, a rebuttal witness, and was evidence that could have been obtained before trial. Under these circumstances, the trial court did not abuse its discretion in denying Olsen's motion for a new trial.

### C. Deborah Cole's Testimony

Olsen contends that the trial court erred in admitting the "opinion" testimony of the Commonwealth's rebuttal witness Deborah Cole. On re-direct, the Commonwealth sought to have Cole explain her cross-examination testimony that she willingly and

consistently left her own child in the housing complex where Olsen lived. In explanation, Cole stated that she believed her child was younger than the children that Olsen was alleged to have sexually abused.

> Once a party has "opened the door" to inquiry into a subject, the permissible scope of examination on the subject by the opposing party is a matter for the exercise of discretion by the trial court, and we will not disturb the trial court's action on appeal unless it plainly appears that the court abused its discretion.

Savino v. Commonwealth, 239 Va. 534, 545, 391 S.E.2d 276, 282 (1990) (citation and internal quotation marks omitted). Here, Olsen opened the door to the challenged testimony by the "manner in which he attacked [Cole's] credibility on cross-examination." Id. Cole's testimony on re-direct was admissible to explain Olsen's challenge to her credibility. Under these circumstances, the trial court did not abuse its discretion in allowing the challenged testimony.

For the reasons stated, we affirm the trial court's conviction.

Affirmed.